IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **KENNETH NEWMAN** and **LINDA NEWMAN** | * | **CIVIL ACTION NO. 06-0855** |
| | * | **JUDGE JAMES** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **THE CLARION HOTEL @ LOS ANGELES INTERNATIONAL AIRPORT** | | |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment filed by the defendant, The Clarion Hotel @ Los Angeles International Airport (the "Clarion Hotel"). (Doc. #27). The defendant seeks summary judgment based on the fact that the plaintiffs have not offered evidence of the defendant's scienter, an essential element for their personal injury action. The plaintiffs demur, contending that the burden should not be theirs to shoulder. Louisiana law, however, supports neither the plaintiffs' proposed burden-shifting scheme nor their claim that the circumstances of the injury, without more, create a genuine issue of fact. As a result, it is recommended that the motion be **GRANTED**, and that the case be **DISMISSED with prejudice**.

### I.  FACTS & PROCEDURAL HISTORY

This case arises from an injury Linda Newman sustained when she slid under the sheets of the bed in her room at the Clarion Hotel. As she slid her foot under the sheets, she experienced a sharp pain in her foot. (*Id.* at 11-12). When she examined her foot, she saw that she had an abrasion approximately an inch and a quarter long and that she was bleeding. (Doc. #32, ¶ VII). The Newmans immediately began searching for the cause of the injury. After a few

1

minutes, Kenneth Newman discovered an industrial needle (similar to a curved sewing needle) deeply embedded in the hotel bed's mattress. (*Id.*; Doc. #27-2-C, p.14).

The plaintiffs filed suit in federal court alleging that the incident caused medical expenses, pain and suffering, and emotional distress. (Doc. #1). They seek damages in the amount of $200,000. The undersigned found that the original complaint did not adequately allege diversity of citizenship to establish subject matter jurisdiction and issued an order permitting the plaintiffs to amend the complaint. (Doc. #31). The plaintiffs filed an amended complaint on April 23, 2008, (Doc. #32), which has satisfied the undersigned's concerns.

## II.  LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(b). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III.  LIABILITY UNDER LOUISIANA LAW

In diversity cases, federal courts must apply state substantive law. *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In this case, the parties agree that Louisiana law applies. (Doc. #30-1, p.3; *see* Docs.

#27, #27-1).

The plaintiffs have brought suit pursuant to Louisiana Civil Code articles 2315, 2316, 2317, and 2317.1.[1]  (Doc. #30-1, p.5).  "Louisiana Civil Code articles 2315 and 2316 provide the basic codal foundation for delictual liability in [Louisiana]." *Broussard v. Voorhies*, 970 So. 2d 1038, 1042 (La. Ct. App. 2007).  Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317.  *Id.*  Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter." *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001); *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000).  Article 2317.1 "eliminated that distinction."  *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5.  As a result, the Newmans must establish that the defendant "knew or should have known" of the protruding needle's presence, regardless of the code article(s) under which they seek relief.  *Id.*

### A. Burden of Proof

The plaintiffs have offered no evidence of scienter; instead they ask this court to place the burden on the defendant to establish that it is free from fault.  (Doc. #30-1, p.6).  Their argument is contrary to Louisiana law, which provides that normally the "burden of proof in a personal injury case is upon the plaintiff."  *Arceneaux v. Domingue*, 365 So. 2d 1330, 1335 (La.

---

[1] The defendant incorrectly asserts that the suit may be governed by LA. REV. STAT. ANN. § 9:2800.6.  Section 9:2800.6, which governs the liability of merchants, expressly limits its scope with regard to innkeepers.  (Doc. #27-1).  It states: "For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn."  LA. REV. STAT. ANN. § 9:2800.6(C)(2).  As the injury in this case took place in the private room of the hotel's guests, the plaintiffs' claims fall outside the scope of the statute.

1978). Notwithstanding this hurdle, the plaintiffs cite no authority that directly supports the placement of the burden of proof on the defendant in cases such as this.

Where, as here, there is no code provision or Louisiana Supreme Court case directly on point, the court is forced to make an "*Erie* guess." *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir. 2007). The court's role in making an *Erie* guess is not "to alter existing law or to change direction." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986) (en banc) (*overruled, in part, on other grounds* ). The Fifth Circuit has recently dictated how courts in this circuit are to make *Erie* guesses:

> we must . . . determine, in our best judgment, how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*Vanderbrook*, 495 F.3d at 206 (citations and quotation marks omitted). In making an *Erie* guess, this court acknowledges that "the *Erie* obligation is to the [Civil] Code, the solemn expression of legislative will." *Shelp v. Nat'l Sur. Corp.*, 333 F.2d 431, 439 (5th Cir. 1964) (quoting the very first article of the Louisiana Civil Code).

In support of their burden shifting argument, the plaintiffs cite a number of cases that have no bearing here. They cite first to a line of cases holding "that a presumption of negligence arises when the defendant's car leaves its own lane of traffic and crosses into another where it strikes the plaintiff's car." *Elder v. Rowe*, 653 So. 2d 718 (La. Ct. App. 1995) (citing *Rizley v. Cutrer*, 232 La. 655, 663 (La. 1957) ("it seems only reasonable. . . that a motorist owes . . . the duty of remaining in his own lane."); *see also Arceneaux*, 365 So. 2d 1330; *Simon v. Ford Motor*

4

*Co.*, 282 So. 2d 126 (La. 1973). In addition, the plaintiffs cite several slip and fall cases in which the burden was placed on the defendant to prove that it was free of fault. *See Duckett v. K-Mart Corp.*, 645 So. 2d 621 (La. 1994); *Neyrey v. Touro Infirmary*, 639 So. 2d 1214 (La. Ct. App. 1994).

The undersigned finds no reason, however, to believe that the Louisiana Supreme Court would extend the rules in those cases – to the extent they remain good law[2] – to the case at bar. *See Arceneaux*, 365 So. 2d at 1335 (stating that only in "exceptional cases" will a defendant bear the burden of exculpating himself.). The plaintiffs cite no caselaw, treatise, or code article that supports their argument. As this case does not involve a car accident or a slip and fall in either a store (*Duckett*) or hospital (*Neyrey*), the undersigned finds no basis for adopting the burden-shifting employed in those cases.

In fact, the plaintiffs base their argument on policy grounds rather than on jurisprudence, contending that "it would be unfair to place the burden" on them. (Doc. #30-1, p.6). The undersigned does not believe that the Louisiana Supreme Court would be persuaded by this policy argument. *C.f. Neyrey*, 639 So. 2d at 1217 (rejecting argument that "policy reasons dictate" a lower burden of proof for hospitals in slip and fall cases). In fact, the momentum in Louisiana is squarely against the plaintiffs; the state legislature has recently eliminated strict liability, LA. CIV. CODE ANN. art 2317.1, and has made lawsuits against merchants more burdensome for plaintiffs. *See Perez v. Wal-Mart Stores*, 608 So. 2d 1006, 1008 (La. 1992) ("After enactment of the [amendments to LA. REV. STAT. ANN. § 9:2800.6] floor debris does not

---

[2] The cases imposing a burden of proof on the defendant drivers relied heavily on the pre-amendment version of LA. CIV. CODE ANN. art. 2317. *E.g. Arceneaux*, 365 So. 2d at 1335 (stating that "[i]t is more appropriate, however, to resort to the standards established in . . . Civil Code article 2317."); *Elder*, 653 So. 2d 718. In addition, *Duckett*'s burden shifting scheme is based on the since-amended LA. REV. STAT. ANN. § 9:2800.6. 645 So. 2d at 621.

create a presumption of store negligence."); 1990 La. Acts 1025.

The last Louisiana Supreme Court case dealing with innkeeper liability supports this court's conclusion that the Court would be disinclined to place the burden on the defendant. The Court last considered the duty an innkeeper owes to its patrons was in 1982. *Kraaz v. La Quinta Motor Inns, Inc.*, 410 So. 2d 1048 (La. 1982). The "primary issue" in *Kraaz* was whether the innkeeper in the case was liable for an employee's negligence which led to the armed robbery of a guest. *Id.* at 1049. While the facts of the case differ from those currently before the court, *Kraaz* provides guidance, as the Court held that an innkeeper owes its patrons a duty of care higher than ordinary or reasonable care:

> An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Thus, a guest is entitled to a high degree of care and protection.

*Id.* at 1053; *see also Banks v. Hyatt Corp.*, 722 F.2d 214, 220 (5th Cir. 1984) (interpreting *Kraaz* as holding that "innkeepers owe their guests a duty of care higher than ordinary or reasonable care."). Critically, although the Court recognized that innkeepers owe a heightened duty, it did not indicate that a defendant innkeeper bears the burden of proof in a tort case. *See Kraaz*, 410 So. 2d 1048.

The United States Sixth Circuit Court of Appeals, in *Brewster v. La Quinta Inns, Inc.*, relying on Louisiana law, also rejected an argument similar to that made by the plaintiffs. No. 97-3115, 1998 U.S. App. LEXIS 4499 (6th Cir. Mar. 9, 1998). In *Brewster*, the plaintiff was injured in a hotel room after a defective heater began emanating thick smoke. *Id.* at *2. The plaintiff in *Brewster* argued that the court should shift the burden to the defendant to prove that it did not breach its duty of care to her. *Id.* at *9 n.3. The court rejected the argument, reasoning

> because **we can find no other statutory or case authority in Louisiana that shifts the burden of proof to an innkeeper** to prove it exercised reasonable care (i.e., it did not have constructive notice by its failure to maintain the premises) in maintaining its premises or equipment, we hold that Brewster retained the burden of proving La Quinta had constructive notice of a defect.

*Id.* (emphasis added). In the undersigned's judgment, the Louisiana Supreme Court would reject the plaintiffs' argument that the burden should be placed on the defendant. As a result, the general rule on the issue controls: The burden is on the plaintiffs to establish the defendant had the requisite scienter. *Lasyone*, 786 So. 2d at 689 n.9.

    **B.    Genuine Issue of Fact**

Although they present no evidence on the issue, the plaintiffs contend that the defendant's scienter is a genuine issue of fact and is therefore ill-suited for resolution via summary judgment. Specifically, the plaintiffs contend that "[w]hether the period of time that the needle in the bed existed was sufficient to provide [the defendant] with constructive notice is a fact question that must be submitted to a jury." (Doc. #30-1, p.8). In support of this argument, the plaintiffs cite *Bagley v. Albertsons, Inc.*, 492 F.3d 328 (5th Cir. 2007), a slip and fall case.

*Bagley* does not control for several reasons. First, the plaintiff in *Bagley* sued under LA. REV. STAT. ANN. § 9:2800.6, rather than the code articles 2315-2317.1. Consequently, the *Bagley* court considered constructive notice as defined under § 9:2800.6, rather than scienter which is required under the code.[3] Second, even if the analysis in *Bagley* is nonetheless informative, it does not support the proposition that the plaintiffs claim. The plaintiffs contend that *Bagley* stands for the proposition that constructive notice is *always* a question of fact to be submitted to a jury. (Doc. #30-1, p.8). The *Bagley* court, however, stated that "'there remains the

---

[3] The plaintiffs acknowledge that § 9:28006 does not apply to this case. (Doc. #30-1, p.3).

prerequisite showing of some time period.' There is no bright line time period, but 'some positive evidence is required of how long the condition existed prior to the fall.' " *Id.* at 331 (quoting *Robinson v. Brookshires # 26*, 769 So. 2d 639, 642 (La. Ct. App. 2000)). Third, to the extent that *Bagley* applies, it can be distinguished. In *Bagley*, the court held that the circumstances of the spill, without more, raised an inference that it had been there for a significant period of time. *Id.* This was the case because the spill was large enough that it appeared in multiple aisles of the store. *Id.* Thus, the spill itself was probative of constructive notice, i.e. that the defendant should have known of its existence. *Id.* In this case, on the other hand, the plaintiffs have offered no evidence of how long the condition existed prior to the injury. (*See* Docs. #27-2-B, p.14-15, #27-2-C, p.14 (plaintiffs stating at their depositions that they did not know how long the needle had been there)). Nor do the circumstances of Linda Newman's injury raise an inference that the needle had been protruding from the mattress for a significant period of time. Based on the limited evidence presented, it would be purely speculative to infer that the needle had been protruding for a significant period of time. Thus, *Bagley* is of no assistance to the plaintiffs.

For similar reasons, the doctrine of res ipsa loquitur is not appropriately applied in this case. In Louisiana, res ipsa loquitur serves as an exception to "the general rule that negligence is not to be presumed" and the doctrine "must be sparingly applied." *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992). Res ipsa loquitur properly applies when "all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 44-45 (La. 2006) (quoting *Larkin v. State Farm Mut. Auto. Ins. Co.*, 97 So. 2d 389 (La. 1957)).

8

Here, it is not the case that "the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty." *See Lawson*, 938 So. 2d at 44-45. For example, it is quite plausible that the needle was left in the mattress during the manufacturing process and gradually worked it's way to the surface shortly before Linda Newman was injured. While Louisiana innkeepers are held to a heightened duty standard,[4] they are not strictly liable for their patrons' injuries. *See Kraaz*, 410 So. 2d at 1053 (requiring innkeepers to take "reasonable precautions" and stating that "[a]n innkeeper does not insure his guests against the risk of injury . . . resulting from violent crime."); *see also Brewster*, 1998 U.S. App. LEXIS 4499, at *7-8 (under the heightened duty standard, "unlike in strict liability cases," the plaintiff must show that the defendant knew or should have known of the defect.).

Yet, some duty akin to strict liability is exactly what would be required for this court to conclude that the existence of the needle in the plaintiffs' bed, without more, leads to "the only fair and reasonable conclusion . . . that the accident was due to some omission of the defendant's duty." *See Lawson*, 938 So. 2d at 44-45. Merely half an inch of the needle was protruding from the mattress, rendering it virtually invisible. (Doc. #27-2-C, p. 13). Even after the plaintiffs realized that there was something foreign in the bed, they struggled to locate it. Kenneth Newman had to take "his hand to kind of feel – blindly feel to see what was sticking" his wife.

---

[4] The defendant contends that an innkeeper's duty is merely to exercise reasonable and ordinary care by maintaining the premises in a reasonably safe and suitable condition. (Doc. #27-1). It seems that this is the prevailing view among the Louisiana Courts of Appeal. *See e.g. Jones v. Hyatt Corp. of Del.*, 681 So. 2d 381 (La. Ct. App. 1996), *Spencer v. Red River Lodging*, 865 So. 2d 337, 343 (La. Ct. App. 2004); *but see Gray v. Holiday Inns, Inc.*, 762 So. 2d 1172, 1175 (La. Ct. App. 2000) (holding that an innkeeper owes its guests "a high degree of care and protection."). This court, however, must follow Louisiana Supreme Court precedent, and may disregard the lower courts' opinions (even if they rise to the level of *jurisprudence constante*) if convinced that the Supreme Court would disagree. *Vanderbrook*, 495 F.3d at 206.

(Doc. #27-2-B, p. 13-14). Any duty requirement that would require a defendant to discover the proverbial needle in a haystack would amount to the imposition of strict liability. As Louisiana law does not impose a strict liability standard on innkeepers, the existence of the needle in the plaintiffs' bed does not lead to the inevitable (or even natural) conclusion that the defendant breached its duty of care. Since the plaintiffs offer no evidence of an essential element of their case and the circumstances of the injury do not create a genuine issue of fact, this court must grant the defendant's motion for summary judgment.[5]

## IV. CONCLUSION

Consequently, after review of the affidavit and applicable law, and in light of the evidence presented, it is **RECOMMENDED** that the motion for summary judgment (Doc. #27) be **GRANTED**, and that the case be **DISMISSED with prejudice**. Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[5] By letter, the counsel for the defendant has raised an issue as to whether the named defendant is a legal "person" capable of being sued. Thus, the court should consider that matter before further proceedings in this case should it elect to deny the instant motion.

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED this 30th day of April, 2008, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE